IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CATHY RAY, et al., | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | )   CASE NO. 2:18-CV-828-MHT-KFP |
| | ) |
| PATES CHAPEL BAPTIST CHURCH | ) |
| AND CEMETERY, et al., | ) |
| | ) |
|     Defendants. | ) |

### RECOMMENDATION OF THE MAGISTRATE JUDGE

Pending before the Court are the Motion to Dismiss filed by Pates Chapel Baptist Church and Cemetery (Doc. 43) and the Motion to Dismiss filed by Patty Petrus[1] (Doc. 73). Plaintiffs responded to both motions (Docs. 54, 77), and Defendants filed replies (Docs. 60, 78). The District Judge referred this matter to the undersigned Magistrate Judge pursuant to 28 U.S.C.A. § 636 for further proceedings and determination or recommendation as may be appropriate. Docs. 3, 22. For the reasons stated below, the undersigned RECOMMENDS that Plaintiffs' Complaint be DISMISSED in its entirety WITH PREJUDICE.

### I.   PROCEDURAL BACKGROUND

Pates Chapel Baptist Church operates and maintains Pate's Chapel Cemetery in Chilton County, Alabama. Doc. 34 ¶ 4–5. Plaintiffs Cathy Ray and Debbie Gonzalez are

---

[1] Patty Petrus is incorrectly identified in Plaintiffs' filings and on the Court's docket as Patty Pretus.

the daughters of John Cecil Ray, who is buried in the cemetery. *Id.* at ¶ 6–7. Defendants Mary Alice Ray, Cindy Underwood, and Patty Petrus are Plaintiffs' relatives. *Id.* at ¶ 35.

In July 2014, Cathy Ray called Howard Smith, head of the Cemetery Committee at Pates Chapel, about placing a marker on her father's grave. *Id.* at ¶ 8. Smith told Cathy Ray her father was not buried in Pate's Cemetery. *Id.* at ¶ 7. Cathy Ray assured Smith that he was buried in the cemetery next to his mother, Margaret Ray. *Id.* Smith told her that a cemetery plot map did not show her father's grave and that there was no room for a grave next to Margaret Ray. *Id.* at ¶ 13, 16. Despite the plot map, Smith did suggest that a grave could be located next to Margaret Ray because he knew the ground had been disturbed in that area. *Id.* ¶ 15. On November 20, 2014, Plaintiffs, along with another sister who is not a plaintiff in this lawsuit, filed a complaint against Pates Chapel in the Circuit Court of Chilton County, Alabama, alleging negligence, wantonness, outrage, and breach of contract. *Id.* at ¶ 27. The facts supporting those claims principally related to the July 2014 conversation between Cathy Ray and Howard Smith described above. *See* Doc. 16 at 3.

On January 31, 2015, while the state court litigation was ongoing, Mary Alice Ray, Underwood, and Petrus placed a grave marker on what they believed to be Plaintiffs' father's gravesite without Plaintiffs' permission. Doc. 34 ¶ 35–36. Pates Chapel never told Plaintiffs about the marker or asked for their permission to place the marker. *Id.*

The Chilton County Circuit Court granted Pates Chapel summary judgment on all claims in the state lawsuit, and the sisters appealed to the Alabama Court of Civil Appeals, which transferred the case to the Alabama Supreme Court for lack of jurisdiction. Doc. 16 at 3. The Supreme Court transferred the case back to the Court of Civil Appeals pursuant

to Alabama Code § 12-2-7(6). The Court of Civil Appeals affirmed the grant of summary judgment and issued a Certificate of Judgment on August 1, 2018. *Id.*

On September 24, 2018, Plaintiffs filed this lawsuit against Pates Chapel. Doc. 1. Before service of the Complaint, the Magistrate Judge ordered Plaintiffs to amend their Complaint, describing it as a "shotgun pleading" with "factual allegations [that] are vague, imprecise, and include a host of legal conclusions." Doc. 4 at 1–2. The Order described in detail the characteristics of a shotgun pleading and gave specific instructions on how to amend the Complaint. *Id.* 4 at 2–4. In response to that Order, Plaintiffs filed a second Complaint alleging claims of negligence and intent to defraud (Count I), outrage (Count II), and civil rights and civil rights infringement violations (Count III) against Pates Chapel.[2] Doc. 5.

Pate's Chapel filed a Motion to Dismiss, arguing that Plaintiffs' claims were barred by the doctrine of res judicata. Doc. 6. After briefing by the parties, the Magistrate Judge recommended that the motion be granted as to all claims arising out of the 2014 conversation described above, because those claims had been litigated in state court, but denied as to the January 2015 placing of the grave marker and subsequent events. Doc. 16 at 10. Over Plaintiffs' objections, the District Court adopted the Magistrate Judge's Report and Recommendation. Doc. 22. Pursuant to that Order, Plaintiffs' claims arising out of the 2014 conversation were dismissed. *Id.*

---

[2] In an effort to reduce confusion by identifying the Complaints as they are labeled (Complaint, Amended Complaint, First Amended Complaint (proposed but not filed), and Revised First Amended Complaint), the undersigned will refer to them in the order they were submitted.

Approximately four months later, Plaintiffs filed a Motion for Leave to Amend the Amended Complaint for the purposes of adding Mary Alice Ray, Cindy P. Underwood, and Patty Porter Petrus as Defendants. Doc. 30 at 1. The proposed third Complaint attached to the motion consisted of 17 single-spaced pages, and it asserted the same claims previously asserted against Pates Chapel (negligence, intent to defraud, outrage, and civil rights violations) against the three individual Defendants. *Id.* The Magistrate Judge granted Plaintiffs' motion; however, he advised Plaintiffs that the third Complaint was unacceptable as written and ordered them to file another complaint that complied with Rules 8(a) and 10(b) of the Federal Rules of Civil Procedure. *See* Doc. 33. The Order specifically quoted language from Rule 8(a) requiring a short and plain statement of claims and language from Rule 10(b) requiring paragraphs to be limited as far as practicable to a single set of circumstances. *Id*. In response to that Order, Plaintiffs filed a 62-page, single-spaced Complaint asserting the following causes of action:

1. Negligence against Pates Chapel
2. Negligence against Mary Alice Ray, Underwood, and Petrus
3. Wantonness against Pates Chapel
4. Wantonness against Mary Alice Ray, Underwood, and Petrus
5. Intent to Defraud against Pates Chapel
6. Intent to Defraud against Mary Alice Ray, Underwood, and Petrus
7. Outrage against Pates Chapel
8. Outrage against Mary Alice Ray, Underwood, and Petrus
9. Intentional Infliction of Emotional Distress against Pates Chapel
10. Intentional Infliction of Emotional Distress against Mary Alice Ray, Underwood, and Petrus
11. Civil Rights, Civil Rights Infringement, and the Fourth and Fifth Amendment Violations against Pates Chapel
12. Civil Rights, Civil Rights Infringement, and the Fourth and Fifth Amendment Violations against Mary Alice Ray, Underwood, and Petrus
13. Conspiracy under 18 U.S.C. § 241 against Pates Chapel

    14.    Conspiracy under 18 U.S.C. § 241 against Mary Alice Ray, Underwood, and Petrus
    15.    Credibility against Pates Chapel
    16.    Credibility against Mary Alice Ray, Underwood, and Petrus
    17.    Malice against Pates Chapel
    18.    Malice against Mary Alice Ray, Underwood, and Petrus

Not only did the fourth Complaint add claims that were never mentioned in the motion requesting permission to amend, it was replete with legal conclusions and factual allegations about the 2014 conversation, all in derogation of this Court's Orders granting permission to amend, requiring a short and plain statement of Plaintiffs' claims, and prohibiting re-litigation of claims arising out of the 2014 conversation.

    Pates Chapel then filed a Motion to Dismiss, arguing that the fourth Complaint is a shotgun pleading, that this Court lacks subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs failed to allege cognizable federal claims, that Plaintiffs failed to invoke diversity jurisdiction,[3] and that all claims are barred by res judicata. Doc. 43. Petrus also filed a Motion to Dismiss. Doc. 73. Like Pates Chapel, she challenges the fourth Complaint as a shotgun pleading, and she asserts that all claims are either barred by the applicable statutes of limitation or are not viable causes of action. *Id.* It appears from the Clerk's docket that Mary Alice Ray and Cindy P. Underwood have been served with a copy of the Summons and fourth Complaint, but, as of the date of this Recommendation, they have not filed responsive pleadings.

---

[3] Pursuant to the Report and Recommendation adopted by the District Court, this Court has already found that it has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332. *See* Doc. 16 at 1–2.

5

## II.     STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is "plausible on its face" if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Factual allegations need not be detailed but "must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice. *Iqbal*, 556 U.S. at 678.

While pro se pleadings are liberally construed and held to a lesser standard than those prepared by attorneys, pro se litigants must still comply with the Federal Rules of Civil Procedure. *Giles v. Wal-Mart Distrib. Ctr.*, 359 F. App'x 91, 93 (11th Cir. 2009); *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008). A court's leniency cannot serve as a substitute for pleading a proper cause of action. *See Odion v. Google Inc.*, 628 F. App'x 635, 637 (11th Cir. 2015) (recognizing "this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action") (internal quotation marks omitted)). Rule 8 of the Federal Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and that each factual allegation be "simple, concise, and direct." Fed. R. Civ. P. 8(a)(2) & (d)(1).

When considering a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., the court accepts all facts alleged in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010). The court must ask whether there are allegations that are no more than conclusions. Claims that fall into this category are discarded. The court next considers whether there are any remaining factual allegations which, if true, could plausibly give rise to a claim for relief. If there are none, the complaint will be dismissed. *Twombly*, 550 U.S. at 570.

## III. FACTUAL ALLEGATIONS[4]

Taking Plaintiffs' factual allegations as true, the fourth Complaint asserts the following: On January 31, 2015, several months after Plaintiffs filed a state court lawsuit, Mary Alice Ray, Underwood, and Petrus placed a marker on what they believed to be Plaintiffs' father's gravesite. Doc. 34 at ¶ 36. They did this without consulting Plaintiffs or getting Plaintiffs' permission. *Id.* Pates Chapel knew Mary Alice Ray and her daughters planned to place the marker on the wrong gravesite. *Id.* at ¶ 40. Like the individual Defendants, Pates never told Plaintiffs about the marker or asked for permission to place the marker. *Id.* The incorrect plot where the marker was placed is referred to as "Plot 108" by Plaintiffs. *Id.* at ¶ 25–26.

On February 13, 2015, Pates Chapel and Mary Alice Ray "endorsed" an affidavit witnessed by Underwood and Petrus. *Id.* at ¶ 37. The affidavit stated that Mary Alice Ray

---

[4] As mentioned above, the fourth Complaint alleges facts related to the 2014 conversation between Cathy Ray and Howard Smith. In making this Recommendation, all allegations of conduct related to that conversation have been disregarded pursuant to this Court's previous Orders.

7

was not aware of the pending state lawsuit when she placed a marker on John Cecil Ray's grave, but Pates Chapel has produced documents confirming that someone at Pates Chapel spoke or met with one or more of the individual defendants in December 2014 before the marker was placed. *Id.* Also, Smith testified that he told Petrus about the pending lawsuit. *Id.* at ¶ 38. The marker was placed on the wrong location "thereby defying the correct gravesite location" provided to Pates Chapel by Plaintiffs in July and August 2014. *Id.* at ¶ 39.

In August 2015, Plaintiffs met with the individual Defendants. *Id.* at ¶ 41. Plaintiffs' former attorney and another attorney were also present. *Id.* During the meeting, Petrus displayed anger and hostility toward Plaintiffs. *Id.* at ¶ 42.

In September 2015, Ron Maddox, a Pates Chapel employee, testified that John Cecil Ray's gravesite was never moved or relocated within the cemetery, which, according to Plaintiffs, confirms that he was buried next to Plaintiffs' grandmother. *Id.* at ¶¶ 26, 45. Maddox also testified that Plaintiff's father's name has always been on the plot map at Plot 108, but the name was not on the plot map when Plaintiffs spoke to Smith in 2014. *Id.* at ¶ 46. On October 30, 2015, Howard Smith falsely testified that Cathy Ray denied that John Cecil Ray was her father. Doc. 34, ¶ 23. Smith also testified that the cemetery plot map had been constantly revised with numerous inaccuracies. *Id.* at ¶ 24. He testified that he did not know who was in Plot 108 and that a road in the cemetery was moved in 2008 to make room for more graves. *Id.* at ¶¶ 47, 50. Plots were renumbered in 2008, but Plaintiffs' father was buried in 1979 before Plot 108 existed. *Id.* at ¶ 50. When Maddox and Smith testified,

they confirmed that there is no documentation verifying the gravesite of Plaintiffs' father and that their plot map had discrepancies. *Id.* at ¶ 45.

In the February 2015 affidavit referenced above, Mary Alice Ray stated that Plaintiff's father's grave has never been moved, which further supports that he is not buried in Plot 108 because Plot 108 did not exist in 1979. *Id.* at ¶ 51. On Pates Chapel's plot map, the name on Plot 108 appears to have been scratched out or erased and replaced with the name "J. C. Ray." *Id.* at ¶ 52. However, Plaintiffs' father's legal name was John Cecil Ray. *Id.* The original name on Plot 108 was "Pam Porter Peal," who died in 2011 and is the daughter of Mary Alice Ray and sister to Underwood and Petrus. *Id.* at ¶¶ 52–53.

The individual Defendants have made statements regarding their recollections of Plaintiffs' father's death, funeral, and burial without believing Plaintiffs' recollections. *Id.* at ¶ 54. Mary Alice Ray does not recall that Cathy Ray attended the funeral. *Id.* Employees of Pates Chapel have "repeatedly stated" that Plaintiffs are non-residents of Alabama even though Cathy Ray lived in Alabama until 2015. *Id.* at ¶ 55. Plaintiffs believe these statements impaired and violated their civil rights due to national origin and the right to "leave, travel, visit, return[,] or change." *Id.* This discrimination caused their state court case to be dismissed, violating the Plaintiffs' civil rights to a fair trial. *Id.* The dismissal also denied Plaintiffs due process, procedural fairness, and the right to state claims against Defendants. *Id.* at 56.

## IV. DISCUSSION

### A. Plaintiffs' claims of negligence, wantonness, fraud, outrage, and intentional infliction of emotional distress are barred by the applicable statute of limitations.

The conduct alleged by Plaintiffs in this lawsuit occurred in December 2014 when Defendants met to discuss the pending state court lawsuit, in January 2015 when the grave marker was placed on the gravesite, in February 2015 when Mary Alice Ray signed an affidavit that was witnessed by Underwood and Petrus, in August 2015 when Petrus was hostile toward Plaintiffs at a meeting, and in September and October 2015 when two employees of Pates Chapel testified about their recollection of the events giving rise to this lawsuit. Even assuming this conduct would support claims for negligence, wantonness, fraud, outrage, or intentional infliction of emotional distress, those claims are barred by the applicable statutes of limitations.

Federal courts sitting in diversity jurisdiction apply the state statute of limitations to claims based on diversity jurisdiction. *Cambridge Mut. Fire Ins. Co. v. City of Claxton, Ga.*, 720 F.2d 1230, 1232 (11th Cir. 1983). Alabama has a two-year statute of limitations for negligence, wantonness, and fraud. *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1347 (11th Cir. 2001) (negligence); *King v. W. Morgan-E. Lawrence Water & Sewer Auth.*, No. 5:17-CV-01833-AKK, 2019 WL 1167787, at *2 (N.D. Ala. Mar. 13, 2019) (negligence, fraudulent concealment, and wantonness); *Lennon v. Ala. Telecasters, Inc.*, No. 2:18-CV-967-ECM, 2020 WL 413011, at *6 (M.D. Ala. Jan. 24, 2020) (fraud); *Kinsey v. CenturyTel*, 490 F. App'x 278, 278–79 (11th Cir. 2012) (fraud). As for Plaintiffs' separate claims of outrage and intentional infliction of emotional distress, "Alabama's tort of outrage is

essentially equivalent to what many states refer to as intentional infliction of emotion distress." *Palmer v. Infosys Techs. Ltd. Inc.*, 888 F. Supp. 2d 1248, 1253 (M.D. Ala. 2012) (internal quotations omitted) (citing *K.M. v. Ala. Dep't of Youth Servs.*, 360 F. Supp. 2d 1253, 1259 n. 4 (M.D. Ala. 2005)); *see also Wilson v. Univ. of Ala. Health Servs. Found., P.C.*, 266 So. 3d 674, 675 (Ala. 2017) (noting that outrage is the same cause of action as intentional infliction of emotional distress) (citing *Thomas v. Williams*, 21 So.3d 1234, 1237 (Ala. Civ. App. 2008)). In Alabama, like the other torts identified above, outrage or intentional infliction of emotional distress has a two-year statute of limitations. *Anderson v. Surgery Ctr. of Cullman, Inc.*, No. 2:12-CV-00598-AKK, 2018 WL 8807137, at *2 (N.D. Ala. Aug. 27, 2018) ("Indeed, there is no question that the statute of limitations in Alabama for outrage claims is two years.") (citing *Archie v. Enterprise Hosp. & Nursing Home*, 508 So. 2d 693, 695 (Ala. 1987)). Because the most recent alleged conduct occurred in October 2015 and this case was filed in September 2018, all of these claims are barred by the applicable statute of limitations.

In their response to the Motion to Dismiss (Doc. 77), Plaintiffs argue that Alabama's "discovery rule" applies to toll the statute of limitations. First, the discovery rule applies only to fraud actions and cases involving the fraudulent concealment of the existence of a cause of action. *See* Ala. Code § 6–2–3 (1975); *Utils. Bd. of City of Opp v. Shuler Bros.*, 138 So. 3d 287, 293 (Ala. 2013) (citing *DGB, LLC v. Hinds*, 55 So. 3d 218, 225 (Ala. 2010)); *see also Russell Petroleum Corp. v. Environ Prod., Inc.*, 333 F. Supp. 2d 1228, 1232 (M.D. Ala. 2004) (stating there is no discovery rule for negligence or wantonness claims under Alabama law).

11

Second, Plaintiffs base their tolling argument on information they obtained from their former counsel in January of 2020, but they have identified no new information that would invoke the discovery rule. They simply state that their "former counsel did not advise the Plaintiffs of any possible claims against any of the co-defendants during the original lawsuit." Doc. 77 at 28. The discovery rule provides that "[i]n actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud." *SE Prop. Holdings, LLC v. Saint Family Ltd. P'ship*, No. CV 16-0567-WS-MU, 2017 WL 1628898, at *6 (S.D. Ala. May 1, 2017) (quoting Ala. Code § 6-2-3). The Court has carefully reviewed the fourth Complaint, and it is clear that all facts recited in the fraud counts—and the rest of the Complaint—were known to Plaintiffs at least by the time they filed their second Complaint.[5] Further, Plaintiffs do not allege that Defendants fraudulently concealed anything. The fact that Plaintiffs were unaware of potential claims is immaterial. As long as there is no fraudulent concealment by a defendant, ignorance does not toll the statute of limitations. *Russell Petroleum Corp. v. Environ Prod., Inc.*, 333 F. Supp. 2d 1228, 1232 (M.D. Ala. 2004) (citing *Ex parte Floyd*, 796 So.2d 303, 307 (Ala. 2001)). Thus, the undersigned finds no basis for applying Alabama's discovery rule to toll the two-year statute of limitations for Plaintiffs' fraud claims.

---

[5] Plaintiffs allege in their second Complaint that Defendants met in December 2014, the marker was placed in January 2015, the affidavit about the location of the grave was signed by Mary Alice Ray and witnessed by Underwood and Petrus in February 2015, and Smith and Maddox testified about these facts in September and October 2015. *See* Doc. 5 at ¶¶ 25–28.

### B. Plaintiffs' constitutional claims fail because Defendants are not state actors, and the claims are barred by the statute of limitations.

Plaintiffs also allege that Defendants violated their Fifth and Fourteenth Amendment rights. Claims that implicate violations of civil rights must be brought through 42 U.S.C. § 1983. *Gaddis v. Kilgore*, No. 20-CV-47-AKK-JEO, 2020 WL 1809671, at *1 (N.D. Ala. Mar. 4, 2020), *report and recommendation adopted,* No. 20-CV-47-AKK-JEO, 2020 WL 1702351 (N.D. Ala. Apr. 8, 2020). To establish a § 1983 claim, a plaintiff must prove (1) a violation of a constitutional right and (2) the alleged violation was committed by a person acting under the color of state law or a private individual who conspired with state actors. *Melton v. Abston*, 841 F.3d 1207, 1220 (11th Cir. 2016). For a private party to be liable under § 1983, the party must be a state actor, and his conduct must be "fairly attributable" to the state. *Williams v. Town of White Hall, Alabama*, 450 F. Supp. 2d 1300, 1307 (M.D. Ala. 2006) (citations omitted). It is rare that a private party will be considered a state actor for purposes of § 1983. *Id.* In this case, the Defendants are private parties, Plaintiffs do not allege that they are state actors, and nothing in the Complaint suggests that their conduct can be fairly attributable to the state.

Further, even if Plaintiffs could establish their § 1983 claims, those claims would be barred by the applicable statute of limitations. Constitutional claims brought under § 1983 are governed by Alabama's two-year statute of limitations for personal injury actions. *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008) (citing Ala. Code § 6-2-38); *see also Powell v. Thomas*, 643 F.3d 1300, 1303–04 (11th Cir. 2011) (dismissing a § 1983 action based on Alabama's two-year statute of limitation for tort actions). Again,

13

the last date on which any of the Defendants' alleged conduct occurred was October 2015, almost three years before this lawsuit was filed. Therefore, any constitutional claims arising out of Defendants' alleged conduct are due to be dismissed.

    **C.    Plaintiffs' conspiracy claims fail because there is no private right of action under the federal criminal conspiracy statute, and any civil conspiracy claim is barred by the applicable statute of limitations.**

Plaintiffs' next cause of action against Defendants is conspiracy, and they cite 18 U.S.C. § 241 as a basis for these claims. However, § 241 is a statute that criminalizes conspiracies against a person's rights under the Constitution or laws of the United States, and it creates no private right of action. *Pritchett v. Filmore*, 2019 WL 1373674, at *2 (M.D. Ala. Jan. 31, 2019), *report and recommendation adopted,* 2019 WL 1368624 (M.D. Ala. Mar. 26, 2019); *see also Payne v. Allen*, No. 2:08-CV-0296-WKW, 2008 WL 2326327, at *2 (M.D. Ala. June 3, 2008). Therefore, Plaintiffs are entitled to no relief under 18 U.S.C. § 241.

To the extent Plaintiffs attempt to bring civil conspiracy claims under Alabama law, those claims are subject to a two-year statute of limitations. *Eaton v. Unum Grp.*, 2015 WL 5306185, at *4 (N.D. Ala. Sept. 10, 2015) (citing Ala. Code § 6-2-38(l) and *Boyce v. Cassese,* 941 So. 2d 932, 944 (Ala. 2006) (noting the two-year statute of limitations applicable to fraud and conspiracy actions)). The factual basis for Plaintiffs' conspiracy claims is a meeting among Defendants in December 2014 where they "conspired . . . to confer[] and participate together purposely in discussing and placing a marker on the Plaintiffs' father's gravesite." Doc 34 at ¶¶ 211, 225. Because the statute of limitations for

a conspiracy claim arising out of this alleged meeting expired in December 2016, these claims are due to be dismissed.

> **D. Plaintiffs' claims of credibility and malice fail because these are not recognized causes of action under state or federal law.**

The final causes of action in Plaintiffs' fourth Complaint are "credibility" and "malice." As a factual basis for the credibility claims, Plaintiffs allege that Howard Smith testified he had never heard the name John Cecil Ray until he spoke to Petrus, he did not tell anyone about the pending state lawsuit, and Cathy Ray denied John Cecil Ray was her father. Doc. 34 at ¶¶ 236–238. Smith also made statements about the Plaintiffs' misremembering or being mistaken about the correct location of their father's grave. *Id.* at ¶ 239. Plaintiffs further complain that the individual Defendants do not recall Plaintiffs' attendance at their father's wake or funeral and that Mary Alice Ray has stated that she knows exactly where the Plaintiffs' father was buried. Id. at ¶ 243–244. Even if this alleged conduct by Defendants could support a cause of action, Plaintiffs have cited no legal authority showing that "credibility" is a cognizable claim in Alabama or under federal law, and the undersigned is not aware of any. As a result, Plaintiffs have failed to state a claim for credibility, and this claim is due to be dismissed.

Likewise, there is no independent cause of action for "malice" under Alabama or federal law. As factual support for this claim, Plaintiffs again describe the placement of the grave marker without their permission, as well as Pates Chapel's employees' later denial that they knew about the marker. As a legal basis for the claim, Plaintiffs cite Ala. Code § 6-11-20(b)(2). However, that statute dictates when punitive damages may be awarded in

Alabama and merely defines "malice" for that purpose. It does not create an independent cause of action. *See* Ala. Code § 6-11-28 ("Nothing contained in this article shall be construed to grant or create a cause of action or right to recover punitive damages."). Thus, Plaintiffs have failed to state a claim for malice, and it is also due to be dismissed.

> **E.     Plaintiffs' Complaint is a shotgun pleading.**

As outlined above, when Plaintiffs asked the Court for permission to amend their second Complaint, they proposed a 17-page third Complaint naming the individual Defendants and adding factual allegations about their involvement in this case. When the Court granted permission to amend, it issued a specific warning to Plaintiffs about filing a shotgun pleading, giving them instructions on the Rules of Civil Procedure to follow in amending their Complaint. *See* Doc. 33. In response, Plaintiffs' Complaint grew almost four times in length and consisted primarily of allegations about the 2014 conversation between Cathy Ray and Howard Smith even though Plaintiffs were fully aware of the previous dismissal of claims based on that conversation. The fourth Complaint also added causes of action that were never mentioned in Plaintiffs' motion asking for permission to amend; contained misapplied statutes, case law, and Constitutional amendments; referenced exhibits that were not attached or identified in a way to make them easily accessible; and included a multitude of legal conclusions. Thus, the undersigned agrees with Defendants that the fourth Complaint is a shotgun pleading that fails to comply with the Federal Rules of Civil Procedure. *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1322–23 (11th Cir. 2015) (describing four categories of shotgun pleadings). Although pro se pleadings are construed liberally and held to a less stringent standard than

16

those prepared by attorneys, courts "have little tolerance for shotgun pleadings." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018).

Before dismissing a shotgun pleading, a district court must first explain the deficiencies in the pleading and give a plaintiff at least one opportunity to amend. *Arrington v. Green*, 757 F. App'x 796, 797 (11th Cir. 2018). In this case, the Court has issued two separate orders with instructions on how to amend, and Plaintiffs have filed four deficient Complaints. For these reasons, the undersigned concludes that another opportunity to amend would be futile. Accordingly, in addition to the grounds set forth above, Plaintiffs' fourth Complaint is due to be dismissed for failure to comply with the Federal Rules of Civil Procedure and this Court's Orders. *See Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) (recognizing that a dismissal for failure to obey a court order is not generally an abuse of discretion when a pro se litigant has been forewarned).

## V.    CONCLUSION

For the reasons stated above, the undersigned Magistrate Judge RECOMMENDS:

(1)    Plaintiff's Complaint be DISMISSED with prejudice for failure to state a claim upon which relief can be granted;

(2)    As an alternative basis for dismissal, that the Complaint be DISMISSED with prejudice for failure to comply with the Federal Rules of Civil Procedure and this Court's Orders; and

(3)    All remaining pending motions be DENIED as moot.

Further, it is

ORDERED that on or before **December 3, 2020**, the parties may file objections to the Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered by the Court. The parties are advised that this Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except on grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1. *See Stein v. Lanning Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 19th day of November, 2020.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE